**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**THOMAS H.**

                    **Plaintiff,**              **22-CV-06193-HKS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                    **Defendant.**

---

**DECISION AND ORDER**

       As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #14.

**BACKGROUND**

       On June 27, 2019, plaintiff, at the age of 53, protectively filed an application for supplemental security income and disability insurance benefits, alleging an onset date of January 1, 2019. Dkt. #6-5, pp. 2-26.[1] Plaintiff's date last insured was December 31, 2021. Dkt. #6-2, p. 19; Dkt. #6-5, p. 34. Plaintiff alleged he was disabled due to a dislocated right shoulder; a torn right rotator cuff; severe carpal tunnel in his right hand; hemorrhoids; and a degenerative tendon in his right arm. Dkt. #6-6, p. 3. Plaintiff's claim was denied initially, Dkt. 6-3, pp. 2-3, and on reconsideration. Dkt. #6-3, pp. 62-63.

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

Plaintiff requested a hearing, and a telephonic hearing was held on November 24, 2020, before Administrative Law Judge ("ALJ") Michael W. Devlin. Dkt. #6-2, pp. 38-56. Plaintiff appeared with a non-attorney representative.

Plaintiff testified that he lives alone and has a tenth-grade education. Dkt. #6-2, p. 43. He also testified that he last worked in construction, building additions and doing remodeling. Dkt. #6-2, p. 44. Previously, he worked in landscaping and built decks, driveways, and parking lots. *Id.* Dkt. #6-2, pp. 43-44. In these jobs, he was on his feet all day and the heaviest weight he lifted ranged from 80 to 150 pounds. *Id.*

Plaintiff further testified that in 2006, he worked as a heavy-line auto mechanic, which required him to be on his feet all day and lift 80-90 pounds. Dkt. #6-2, pp. 45-46.

Next, plaintiff testified that he cannot lift more than five or six pounds with his right arm due to the pain in his wrist and elbow, and he needs to elevate his arm to sleep. *Id.*[2] He also testified that his doctors recently found another ganglion cyst on his left wrist, and he had another surgery scheduled on his right wrist. Dkt. #6-2, p. 46-47.

Plaintiff testified that he eats mostly TV dinners and canned food because he cannot prepare food with his right hand. *Id.* His sister helps him do laundry and takes

---

[2] Plaintiff's impairments stem from injuries he incurred to his right shoulder, elbow, wrist, and hand on October 13, 2018, when he was working at a garage and was trapped under a car. Dkt. #6-7, p.62; Dkt. #6-13, p. 29.

him to the grocery store. Dkt. #6-2, pp. 47, 49. He manages as best he can with personal care tasks such as bathing and washing his hair, but he is unable to shave with his right hand. Dkt. #6-2, p. 48.

Plaintiff also testified that he is unable to go fishing, bowling, play horseshoes, or go hunting anymore due to his right-arm problems. Dkt. #6-2, p. 49.

Plaintiff testified that he has no difficulty sitting, but he has a knee problem that he is having examined by a doctor. Dkt. #6-2, p. 50.

When asked by the ALJ to describe his arm pain, plaintiff testified that the pain is in is elbow and is a constant "three or four" depending on the weather. Dkt. #6-2, p. 50. His elbow and three fingers on his right hand have been numb since having surgery, and he wears a brace on his wrist all day to prevent overextending it. *Id.* Plaintiff also confirmed that he is right-handed. Dkt. #6-2, p. 51.

Next, the ALJ heard testimony from Joseph Young, a vocational expert ("VE"), who opined as to the Dictionary of Occupational Titles ("DOT") classifications for plaintiff's past work: laborer landscape; construction worker; and auto mechanic. Dkt. #6-2, pp. 51-52.

The ALJ asked the VE to assume a person with plaintiff's age, education, and employment background who would be capable of the range of light exertion work,

lifting or carrying 20 pounds occasionally; lifting or carrying 10 pounds frequently; standing and/or walking about six hours in an eight-hour day; sitting about six hours in an eight-hour day; occasionally stooping and pushing and/or pulling 20 pounds; never climbing ladders, ropes, or scaffolds; and occasionally reaching and/or fingering with the dominant right upper extremity. Dkt. #6-2, p. 52.

The VE testified that plaintiff would be unable to perform his past work[3] at the light exertion level. Dkt. #6-2, p. 52. However, he testified that under the ALJ's hypothetical, the individual could perform the jobs of furniture-rental sales clerk; gate guard; and usher. Dkt. #6-2, pp. 52-53.

However, the VE testified that, based on his professional experience, adding the additional restriction of never reaching or fingering with the dominant right extremity would preclude all work in the competitive labor market. Dkt. #6-2, pp. 53-54.

On examination by plaintiff's representative, the VE testified that, although the DOT does not address off-task time, in his professional experience generally no more than 10% off-task time is tolerated. Dkt. #6-2, p. 54. As to absenteeism, the VE testified that typically no more than one day a month is tolerated; that a maximum of seven days a year is tolerated if the person has at least a year's service; and that an absence each month for three or more consecutive months is not tolerated. *Id.*

---

[3] The hearing transcript states "task work" but this appears to be a transcription error.

On January 19, 2021, the ALJ issued a partially favorable decision finding plaintiff disabled as of September 22, 2020. Dkt. #6-2, pp. 13-32. The Appeals Council denied review on February 28, 2022, Dkt. #6-2, pp. 2-7, and this action followed.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging

in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since January 1, 2019, the alleged onset date; (2) plaintiff has the severe impairments of right torn rotator cuff; right ulnar nerve dislocation; right carpal tunnel syndrome; degeneration of the right biceps tendon; right wrist tenosynovitis; and status post-surgery of the right shoulder, right elbow, and right wrist;  (3) plaintiff's impairments do not meet or equal any listed impairment; (4) since January 1, 2019, plaintiff retained the RFC to perform light work[4], except he can occasionally lift and/or carry 20 pounds; frequently lift and/or carry

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this

10 pounds; stand and/or walk about six hours in an eight hour day; sit about six hours in

an eight hour day; occasionally push and/or pull 20 pounds; occasionally lift and/or carry

twenty pounds; occasionally stoop; never climb ladders, ropes, or scaffolds; and

occasionally reach, handle, and finger with the dominant right upper extremity; (5) since

January 1, 2019, plaintiff has been unable to perform any past relevant work; and (6) prior

to September 22, 2020—when plaintiff was in the "approaching advanced age"

category—plaintiff was capable of working as a furniture-rental sales clerk, gate guard,

and usher, and was not, therefore, disabled prior to that date within the meaning of the

SSA. Dkt. #2-2, pp. 19-31.

The ALJ further found that, on September 22, 2020, plaintiff's age category

changed from "an individual closely approaching advanced age" to "an individual of

advanced age" (55 years old). Dkt. #6-2, pp.30-31. The ALJ thus concluded that as of

that date, there were no jobs in the national economy that plaintiff could perform and that

he then became disabled. Dkt. #6-2, pp. 31-32.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical*

*Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan.

18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no

longer required to afford any specific evidentiary weight to medical opinions, but is

---

category when it requires a good deal of walking or standing, or when it involves sitting most of
the time with some pushing and pulling of arm or leg controls. To be considered capable of
performing a full or wide range of light work, an individual must have the ability to do substantially
all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating

sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

### Challenges to the ALJ's Decision

Plaintiff argues that the RFC is unsupported by substantial evidence, the ALJ failed to evaluate the medical opinions under the correct standards, and he failed to provide adequate reasons for rejecting the additional non-exertional limitations resulting from plaintiff's pain. He argues that the case should be remanded for calculation of benefits or, in the alternative, for further administrative proceedings. Dkt. #9-1, p. 14.

### *Manipulative Abilities and Limitations*

Plaintiff first argues that the ALJ's findings regarding the right-hand manipulative limitations included in the RFC are not supported by substantial evidence, and he improperly evaluated the medical opinions. The Court agrees.

### *The ALJ Cherry-Picked the Evidence*

First, the ALJ clearly cherry-picked the evidence to conclude that plaintiff's right-arm symptoms consistently improved during the period in question and thus supported the provision in the RFC that plaintiff can occasionally reach, handle, and finger with his right upper extremity.

"It is well-settled that an ALJ is not permitted to 'cherry pick' evidence that supports his RFC finding." *Rachel W. v. Comm'r of Soc. Sec.*, 1:23-CV-00643, 2024 WL

2812432, at *4 (W.D.N.Y. June 3, 2024) (citation and internal quotation marks omitted). "Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary." *Id.*

Here, the ALJ reviewed plaintiff's treatment records from approximately early 2019 through January 2020. Dkt. #6-2, pp. 22-24. Importantly, he noted that multiple objective medical tests—including MRIs, x-rays, and an electrodiagnostic study—confirmed the existence of plaintiff's right shoulder, elbow, and hand impairments. Dkt. #6-2, p. 22.

For example, the electrodiagnostic study conducted by Dr. David Speach at the University of Rochester Medical Center on June 7, 2019 resulted in a finding of "abnormal." Specifically, Dr. Speach concluded that plaintiff had "chronic, severe right median neuropathy at the wrist/carpal tunnel syndrome," which he stated was "the most likely reason for the patient's right[-]hand numbness." Dkt. #6-7, p. 28. He also concluded that plaintiff had "chronic, right ulnar neuropathy at the elbow." *Id.*

The ALJ further acknowledged that plaintiff underwent significant treatment in the spring and summer of 2019 to alleviate his right-arm problems. On April 15, 2019, plaintiff underwent an aspiration of, and cortisone injection into, his right shoulder. Dkt. #6-8, pp. 50-51. Dr. Sandeep Mannava, the orthopedist who performed this procedure,

then referred plaintiff to physical therapy ("PT"), with the plan to reevaluate his shoulder in eight weeks. *Id.*

Approximately two months later, Dr. Mannava again examined plaintiff, noted that he had "exhausted PT and cortisone," and recommended that plaintiff undergo surgery on his shoulder. Dkt. #6-9, p. 33. Concurrently, plaintiff was evaluated by another orthopedist—Dr. Danielle Wilbur—for his right elbow and wrist problems, and she too recommended surgery. Dkt. #6-9, p. 39.

On August 15, 2019, Drs. Mannava and Wilbur performed the following surgical procedures on plaintiff: right shoulder arthroscopic rotator cuff repair; right shoulder arthroscopy with debridement and subacromial decompression; cubital tunnel release with right elbow ulnar nerve anterior transposition; and right carpal tunnel release. Dkt. #6-9, p. 59.

After noting numerous symptoms caused by plaintiff's impairments—weakness, decreased sensation, abnormal reflexes, reduced range of motion, and positive diagnostic tests, Dkt. #6-2, p. 23—the ALJ then stated that plaintiff "still demonstrated a number of good physical examination results" and "experienced an improvement of his signs and symptoms through this treatment." Dkt. #6-2, p. 23. However, the overall record does not support these assertions, and, in fact, the ALJ's failure to place the cited records in context renders this assessment misleading.

For example, the ALJ stated that "the claimant confirmed on June 11, 2019 that he was able to do a lot of mowing over the weekend." Dkt. #6-2, p. 23. The record cited by the ALJ is a progress note from the physical therapist who was treating plaintiff under Dr. Mannava's referral. Dkt. #6-9, p. 37. In full, that note states:

> Tom reports that overall **he continues to feel about the same.** He reports that he did a lot of yard mowing over the weekend **which always does seem to cause him an increase in symptoms. He reports that Dr. Mannava wants to do surgery for his shoulder to minimize his symptoms**.

*Id.*

Plaintiff's report that he continued to "feel the same" is informed by PT progress notes—not cited by the ALJ—from the previous two months:

- "[Plaintiff] reports that since he had the CSI (cortisone injection) he notes about 2 days of subjective improved symptoms **but not long lasting relief**." (4/22/2019) Dkt. #6-8, p. 55;

- "Tom reports that overall he feels better **but the pain continues to persist**." (5/15/2019) Dkt. #6-9, p. 17;

- "Tom reports that today **his arm is feeling slightly worse**. . . He reports that he has been doing his exercises and feels that his motion is better **but the pain continues to be no different**." (5/23/2019) Dkt. #6-9, p. 19;

- "Tom reports that **his pain continues to feel about the same. He reports that he is starting to have an increased difficulty with sleeping again about 4 hours a night**." (5/30/2019) Dkt. #6-9, p. 21.

(emphasis added).

In the same vein, the ALJ cited a June 18, 2019 treatment note from Dr. Wilbur's office: "The claimant also confirmed that his symptoms somewhat improved since he started wearing a wrist brace at work and whenever he was using the right hand in any significant capacity." Dkt. #6-2, p. 23. However, the very next sentence of that record notes: "He states however that *if he does not use the wrist splint, his wrist swells and the pain is severe. He is feeling discouraged and believes that his hand will never be like it was before*." Dkt. #6-9, p. 40 (emphasis added). Moreover, these remarks are contained in the very treatment note in which Dr. Wilbur recommended that plaintiff undergo surgery.

The ALJ engaged in similar cherry-picking of plaintiff's post-operative records. For example, he stated: "It was further noted on October 22, 2019 that the claimant experienced improving sensation in the median nerve distribution, despite positive Tinel's sign and decreased sensation to light touch over the posterior elbow." Dkt. #6-2, p. 24. This statement is found in a treatment note from Dr. Wilbur dated October 22, 2019—two months after plaintiff's surgery—but the ALJ did not place it in the context. In fact, the balance of this treatment record states: plaintiff still feels tingling in the posterior elbow; has weakness in his hands and entire arm; is unable to lift a gallon of milk out of the fridge; is unable to make a full fist, thus he cannot use tools; is very sensitive over his scars; feels like there is water dripping down his posterior arm; and chief c/o pain that interferes with function use of RUE (right upper extremity). Dkt. #6-10, pp. 59-62.

The ALJ also did not acknowledge subsequent treatment notes from Dr. Wilbur in October and November 2019 which consistently state: "Pain remains significant limiting factor in functional use of right arm." Dkt. #6-11, pp. 5, 8, 10, 14.

While an ALJ "need not discuss every treating note from every physician who ever saw the claimant, . . . he is not entitled to selectively cite the treating notes or diagnostic imaging that support his finding of disability while failing to address other contrary evidence." *Ramirez v. Comm'r of Soc. Sec.*, 23-CV-5806 (VSB) (BCM), 2024 WL 3046605, at *17 (S.D.N.Y. May 31, 2024) (citations and internal quotation marks omitted), *report and recommendation adopted*, 2024 WL 3046420 (S.D.N.Y. June 18, 2024). *See also id.* (noting that ALJ's focus on plaintiff's alleged improvements "suggest[s] that he took a selective view" of medical records and ignored evidence that plaintiff experienced only short-term pain relief from injections, "after which she frequently reported side effects or complications that worsened her underlying condition; remand warranted); *Carl D. v. Comm'r of Soc. Sec.*, 8:18-CV-1106, 2019 WL 5537627, at *7 (N.D.N.Y. Oct. 25, 2019) ("However, the ALJ's analysis neglects to mention subsequent treatment notes and opinions from Dr. Healey and seemingly ignores Dr. Healey's indications that Plaintiff had clinical findings including cervical myelopathy unimproved following spine surgery and minimal improvement.").

In sum, while the record reflects that plaintiff experienced some post-operative improvements, the relief was short-lived. In fact, as the ALJ recounted, plaintiff underwent an additional joint aspiration and cortisone injection of his right wrist on

November 20, 2019, and he presented to the emergency room on December 27, 2019, with worsening right wrist pain, diminished range of motion, and swelling. Dkt. #6-11, pp. 16, 19-20, 35, 37.

The ALJ did not, however, explain how this evidence factored into his assessment that plaintiff's symptoms had consistently improved after his surgery in August 2019 and the resulting RFC that found plaintiff capable of occasionally[5] reaching, handling, and fingering with his right upper extremity.

To enable a reviewing court to determine whether an RFC is supported by substantial evidence, "an ALJ must sufficiently explain the link between his RFC assessment and the record evidence." *Crystal v. Comm'r of Soc. Sec.*, 22-CV-6358MWP, 2023 WL 4781905, at *4 (W.D.N.Y. July 27, 2023) (citation and internal quotation marks omitted). "Remand may be appropriate. . .where. . .inadequacies in the ALJ's assessment frustrate meaningful review." *Id*.

Finally, these problems are compounded by the fact that, other than acknowledging that plaintiff underwent additional cortisone injections in February and July 2020, the ALJ failed to discuss plaintiff's treatment records from the end of January 2020 to September 22, 2020, the date the ALJ concluded plaintiff became disabled. This leaves

---

[5] "Occasionally" means "very little to up to one third of the time." *Ramirez*, 2024 WL 3046605, at *9, n.9.

the Court unable to review, even deferentially, the ALJ's determination that plaintiff was not disabled during that period.[6]

### *Medical Opinion Evidence*

Second, the ALJ erred in explaining how the manipulative limitations were supported by the medical opinion evidence.

The ALJ first considered the report of Dr. John Fkiaras, who completed a consultative medical examination of plaintiff on September 23, 2019. Dkt. #6-2, pp. 24-25. Dr. Fkiaras noted plaintiff's injury history, his surgery approximately six weeks prior, and his reports of continuing pain and limitations in the use of his right arm. Dkt. #6-7, p. 62. Dr. Fkiaras also noted that plaintiff was wearing a right upper extremity brace. Dkt. #6-7, p. 64.

Upon physical examination, Dr. Fkiaras noted reduced cervical, shoulder, and elbow range of motion; pain upon palpation; decreased sensation of the three outside fingers on plaintiff's right hand; decreased sensation of the right elbow; and strength of 3/5 in the right upper extremity. Dkt. #6-7, pp. 64-65.

---

[6] The Court notes that treatment records dated as late as September 9, 2020—thirteen days before the disability date determined by the ALJ—continue to indicate that plaintiff was reporting only short-term relief from the cortisone injections in his wrist. Dkt. #6-13, p. 31.

Dr Fkiaras also noted that plaintiff had decreased dexterity of the right hand; was unable to fully clench the right hand; and had "marked difficulty zipping, buttoning, and tying using the right hand." Dkt. #6-7, p. 65.

In his medical source statement, Dr. Fkiaras stated:

The claimant has a marked limitation lifting, carrying, pushing, and pulling. The claimant has a **marked limitation reaching with the right upper extremity**. The claimant has a **marked limitation grabbing and squeezing with the right hand. The claimant is restricted from activities which require fine motor skills of the right hand.**

Dkt. #6-7, p. 66 (emphasis added).

In reviewing Dr. Fkiaras' opinion, the ALJ noted—akin to the cherry-picking discussed above—that "the claimant still showed a number of good physical examination results on examination with Dr. Fkiaras." Dkt. #6-2, p. 25. The ALJ cited that plaintiff was in no acute distress; had a normal gait; could walk on his heels and toes; could fully squat; had a normal stance; and could rise from the chair and get on and off the exam table without help. *Id.* Of course, these abilities have nothing to do with plaintiff's right-arm impairments.

While the ALJ then found Dr. Fkiaras's opinion "persuasive," he did not incorporate the limitations expressed by Dr. Fkiaras in the RFC, and he did not explain why. Specifically, the inclusion of "occasional" reaching, handling, and fingering with

plaintiff's right hand is at odds with Dr. Fkiaras's opinion that plaintiff was "restricted" from activities requiring fine motor skills with that hand.

Where an ALJ has accepted a medical opinion assessing even "moderate to marked" limitations, but he nonetheless fashions an RFC at odds with such limitations, "he must explain why the assessed limitations are not inconsistent with the RFC." *Ramirez*, 2024 WL 3046605, at *16.

In addition, because the RFC here was at odds with Dr. Fkiaras's "persuasive" opinion, the ALJ was required to explain which parts of Dr. Fkiaras's opinion he rejected and why. *Id*. The ALJ failed to do so. "Remand is therefore required." *Id*.

Next, the ALJ's reasons for finding Dr. Schirck's opinion "unpersuasive" are not supported by substantial evidence. The ALJ stated: "These opinions are unpersuasive because the opinions were unsupported by Schirck's own treatment of the claimant, which generally consisted of only conservative and routine primary care treatment." Dkt. #6-2, p. 26. This is illogical because Dr. Schirck was merely plaintiff's primary care provider, and his treatment notes naturally would not include the records of plaintiff's treatment by the orthopedic specialists to whom he was referred.

The ALJ's assessment of Dr. Schirk's opinion was also tainted by the erroneous conclusion, discussed above, that plaintiff's right-arm impairments consistently improved after his August 2019 surgery. Dkt. #6-2, p. 27. The same is true for the ALJ's

conclusion that Dr. Wilbur's opinion was "unpersuasive." Dkt. #6-2, p. 27 ("As discussed at length above, the claimant continued to respond well and show improvement through his orthopedic and physical therapy treatment . . .").

Finally, the ALJ found "persuasive" the opinions of state agency medical consultants Dr. H. Miller and Dr. V. Baronas, both of whom opined that plaintiff could occasionally reach, handle, finger, and feel using his right upper extremity. Dkt. #6-2, p. 28. However, the ALJ's assessment was conclusory: "These opinions are persuasive because the opinions were consistent with, and supported by, the clinical evidence." *Id.* But the ALJ does not say what record evidence supported these opinions. *See Marcie S. v. Comm'r of Soc. Sec.*, 21-CV-843S, 2023 WL 2258551, at *5 (W.D.N.Y. Feb. 28, 2023) (noting that applicable regulations require that the ALJ explain his or her findings regarding the supportability and consistency for each medical opinion, "pointing to specific evidence in the record supporting those findings") (citation and internal quotation marks omitted).

Consequently, "the ALJ failed to properly analyze the medical opinions under 20 C.F.R. § 404.1520c(b)(2) and thereby committed legal error requiring remand." *Id.*

### *Pain-Related Non-Exertional Limitations*

Plaintiff also argues that the ALJ improperly failed to include in the RFC non-exertional limitations caused by plaintiff's right-arm pain. Dkt. #9-1, pp. 25-30.

The ALJ considered off-task limitations in the context of rejecting the opinions of Drs. Schirck and Wilbur. Dkt. #6-2, pp. 26-27. Specifically, Dr. Schirck opined that plaintiff's pain and other symptoms would occasionally be severe enough to interfere with the attention and concentration needed to perform even simple work tasks. Dkt. #6-13, pp. 92-93. He also opined that plaintiff's pain significantly impaired his daily functioning. *Id.*

In turn, Dr. Wilbur opined that plaintiff would "constantly" experience such interruptions due to his pain and that he would be absent from work on average for more than four days per month. Dkt. #6-13, pp. 34-35.

As already discussed, the ALJ's assessment of these two doctor's opinions—which, under the testimony of the VE, would be work preclusive, Dkt. #6-2, p. 54—was not supported by substantial evidence.

In addition, the ALJ merely asserted: "The record also contains no evidence supporting such extensive off task and absenteeism limitations." Dkt. #6-2, p. 27. The only evidence cited in support of this statement are two PT treatment records in which plaintiff reported doing yard work. *Id.* As discussed above, however, the overall record demonstrates that such activities exacerbated plaintiff's right-arm symptoms. In addition, even after his August 2019 surgery, plaintiff experienced no sustained relief but instead continued to receive treatments in 2020.

"It is well established that an ALJ must express the reasons underlying his findings with enough clarity to afford meaningful judicial review." *Frank R. v. Comm'r of Soc. Sec.*, 21-CV-6145MWP, 2023 WL 5162664, at *7 (W.D.N.Y. Aug. 11, 2023) (citation and internal quotation marks omitted). "To that end, an ALJ must avoid rote analysis and conclusory explanations and must discuss the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Id*.

The Court concludes that the ALJ's rejection of the off-task limitations to which Drs. Schirk and Wilbur opined does not conform to these standards, and remand is required. *Id.* at *8.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #9) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. #12) is denied, and the case is remanded for further proceedings consistent with this Decision and Order.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:      Buffalo, New York
            July 8, 2024

**s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**